IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION

JUSTIN HAMBLIN                                                                                        PLAINTIFF

v.                            Civil No.   6:11-cv-06026

CAPTAIN STEED, Garland
County Detention Center; and
GARLAND COUNTY, Arkansas                                                                DEFENDANTS

### REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

This is a civil rights action filed by the Plaintiff under the provisions of 42 U.S.C. § 1983. He proceeds *pro se* and *in forma pauperis.* Plaintiff is currently incarcerated in the Arkansas Department of Correction, Maximum Security Unit, in Tucker, Arkansas. The claims at issue in this case arose when Plaintiff was incarcerated in the Garland County Detention Center (GCDC), in Hot Springs, Arkansas. Specifically, Plaintiff maintains he was: (1) subjected to unconstitutional living conditions; (2) denied outdoor exercise with the exception of one day per month; and (3) he was denied adequate medical care.

Pursuant to the provisions of 28 U.S.C. § 636(b)(1) and (3)(2011), the Honorable Robert T. Dawson, United States District Judge, referred this case to the undersigned for the purpose of making a report and recommendation. Currently before me is the Defendants' motion for summary judgment (ECF No. 15) and the Plaintiff's response (ECF No. 23).

### 1.  Background

Plaintiff was arrested and placed in the GCDC on August 18, 2010. *Plaintiff's Response* at ¶ 1 (ECF No. 23)(hereinafter *Resp.*). He remained incarcerated there until March or April of 2011. *Id.* at ¶ 1(a).

According to Plaintiff, he was housed in a pod designed to hold eleven inmates but was being used to hold seventeen inmates. *Resp.* at ¶ 3. As a result, six inmates had to sleep on the floor. *Defendants' Exhibit* A (hereinafter *Defts' Ex.*).

Plaintiff slept on the floor the entire time he was incarcerated in the GCDC. *Id.* at pg. 3 #5; *Resp.* at ¶ 7. Plaintiff was provided with a mattress, sheets, and a blanket. *Resp.*¶¶ 7(a)& 7(d). Plaintiff states the toilet in the cell he was assigned to leaked and when he was sleeping on the floor the water from the leaking toilet would flow onto his mat in the middle of the night. *Id.* at ¶ 7(c).

As a result of sleeping on the floor, Plaintiff maintains he had a staph infection and boils. *Defts' Ex.* A at pg. 3 #5. Plaintiff states he asked for medical care for the boils and staph infection but was denied a nurse visit. *Resp.* at ¶¶ 8 & 8(a). As a result of not receiving medical attention, Plaintiff maintains the infection spread and by the time he was transferred to the ADC he even had a knot on his head. He was treated at the ADC. *Id.* at ¶¶ 8(b) & 8(c). Because it was not treated properly at first, Plaintiff states he endured unnecessary pain and suffering.

As a result of the overcrowding and other conditions, Plaintiff asserts that inmate violence resulted. *Resp.* at ¶¶ 3-4. Plaintiff was attacked by other inmates resulting in him receiving a broken nose and a fractured eye socket. *Id.*

With respect to his ability to exercise, Plaintiff states that when he tried to exercise in the day room it agitated other inmates because they had their mats out there and were trying to rest or watch television. *Resp.* at ¶¶ 4(a). In fact, one time when he was attempting to exercise, Plaintiff states an inmate "put his hands on me because of me wanting to exercise." *Id.* Once a month inmates were allowed to have outside recreation. *Id.* at ¶ 5. Because of the lack of outdoor exercise, Plaintiff states he did not receive any Vitamin D. *Id.*

The pod only had two working toilets; there was no hot water in the cells; and, there was

mold in some of the cells. *Resp.* at ¶ 3. The only available hot water was in the showers. *Defts' Ex. A* at pg. 3 #6; *Resp.* at ¶ 9. He was provided with soap. *Resp.* at ¶ 10. Inmates were also providing cleaning supplies, including watered down bleach. *Id.* at ¶ 11. Plaintiff used the cleaning supplies to clean his mattress and the floor where he slept. *Id.* at ¶ 11(a), However, he states the watered down bleach did not clean the mold or sterilize the mats. *Id.* at ¶ 14.

### 2. Applicable Standard

Summary judgment is only appropriate when no genuine issue of material fact exists, and the moving party is entitled to judgment as a matter of law." *Callanan v. Runyon*, 75 F.3d 1293, 1296 (8th Cir. 1996)(citations omitted). All disputed facts are to be resolved and all inferences drawn in favor of the nonmoving party. *Id.*

"A party opposing summary judgment must do more than allege that some factual dispute exists; it must present a genuine issue of material fact. A nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." *Greater St. Louis Const. Laborers Welfare Fund v. Park-Mark*, 700 F.3d 1130, 1134 (8th Cir. 2012)(internal citations and quotation marks omitted). The Eighth Circuit Court of Appeals has advised trial courts that summary judgments should be cautiously invoked so that no person will be improperly deprived of a trial of disputed factual issues. *Inland Oil & Transport Co. v. United States*, 600 F.2d 725 (8th Cir. 1979).

### 3. Arguments of the Parties

First, with respect to the living conditions, Defendants note that the Plaintiff has a mattress, sheets, and a blanket when he is sleeping, cleaning materials were supplied, and there is no connection with sleeping on the floor and contracting a staph infection. Second, with respect to medical care claim, Defendants state Plaintiff has not even alleged that he suffered from any serious medical condition requiring treatment. Further, Defendants assert there is no evidence that

Defendant Steed was even personally aware of the alleged staph infection. Finally, on the exercise claim, Defendants argue even if Plaintiff's allegations are true they do state a claim of constitutional dimension.

Plaintiff maintains the living conditions, including the overcrowding and the having to sleep on the floor when there was a leaking toilet, resulted in an increase in inmate violence. Plaintiff believes he was attacked by inmates because of the living conditions. Next, Plaintiff maintains he contracted staph infection which resulted in him developing boils. He asserts he requested medical attention and was denied a visit with the nurse. Finally, Plaintiff believes he should have been provided outdoor exercise on a more frequent basis. He asserts that the lack of outside exercise had a detrimental effect on the amount of vitamin D he received. With respect to indoor opportunity to exercise, Plaintiff maintains that because of the overcrowding any attempts at exercise caused problems with other inmates. Additionally, he states there was insufficient amount of space to exercise inside.

### 4.  Discussion

"[W]hen the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being." *County of Sacramento v. Lewis*, 523 U.S. 833, 851 (1998)(citation omitted). The Constitution does not mandate comfortable prisons, but neither does it permit inhumane ones. *See Farmer v. Brennan*, 511 U.S. 825, 832 (1994). "[I]nmates are entitled to reasonably adequate sanitation, personal hygiene, and laundry privileges, particularly over a lengthy course of time." *Howard v. Adkison*, 887 F.2d 134, 137 (8th Cir. 1989).

The Cruel and Unusual Punishment Clause of the Eighth Amendment forbids conditions

that involve the "wanton and unnecessary infliction of pain," or are "grossly disproportionate to the severity of the crime." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). Prison conditions claims include threats to an inmate's health and safety. *Irving v. Dormire*, 519 F.3d 441, 446 (8th Cir. 2008)(citation omitted).

"A prisoner alleging an Eighth Amendment violation must prove both an objective and subjective element. *Revels v. Vincenz*, 382 F.3d 870, 875 (8th Cir. 2004)(*citing Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). "The defendant's conduct must objectively rise to the level of a constitutional violation by depriving the plaintiff of the minimal civilized measure of life's necessities. The defendants' conduct must also reflect a subjective state of mind evincing deliberate indifference to the health or safety of the prisoner" *Revels*, 382 F.3d at 875 (citations and internal quotation marks omitted). Deliberate indifference is established when the plaintiff shows "the defendant was substantially aware of but disregarded an excessive risk to inmate health or safety." *Revels,* 382 F.3d at 875.

The Supreme Court has stated that "[n]othing so amorphous as 'overall conditions' can rise to the level of cruel and unusual punishment when no specific deprivation of a single human need exists." *Wilson v. Seiter*, 501 U.S. 294, 305 (1991). However, "[c]onditions of confinement may establish an Eighth Amendment violation 'in combination' when each would not do so alone, but only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise–for example, a low cell temperature at night combined with a failure to issue blankets." *Gates v. Cook*, 376 F.3d 323, 333 (5th Cir. 2004)(*citing Wilson*, 501 U.S. at 304). The standards against which a court measures prison conditions are "the evolving standards of decency that mark the progress of a maturing society."

*Estelle v. Gamble*, 429 U.S. 97, 102 (1976).

### A. Sleeping Conditions

It is undisputed that Plaintiff slept on a mat on the floor during his entire incarceration--August 18, 2010, to either March or April of 2011--at least seven months. He had a mat, sheets, and a blanket. Plaintiff also maintains the toilet leaked in the cell and seeped over to his mat. However, he did not indicate that he got wet as a result of the leak. He believes he contracted staph as a result of sleeping on the floor.

While having an inmate sleep on the floor may be constitutionally permissible, *see e.g., Ferguson v. Cape Girardeau County*, 88 F.3d 647, 650 (8th Cir. 1996) (use of a floor mattress for thirteen nights not unconstitutional), consideration must be given to the totality of the circumstances including the length of time the inmate is forced to sleep on the floor and the health of the inmate. *See e.g.*, *A.J. by L.B. v. Kierst*, 56 F.3d 849, 855 (8th Cir. 1995)(sleeping on mattresses on the floor not unconstitutional when it was for only a relatively short period of time and then only when there was a special need); *see also Hubbard v. Taylor*, 538 F.3d 229 (3d Cir. 2008)(having to sleep on the floor for three to seven months was not excessive).

In this case, Plaintiff slept on the floor for at least seven months. He was provided with cleaning supplies everyday. He used the cleaning supplies to clean his mat and the floor where he slept. *Resp.* at ¶ 11(a). However, Plaintiff believes he contracted staph infection as a result of sleeping on the floor and the lack of hot water. Specifically, he stated he developed boils.

"The most common type of staph infection is the boil, a pocket of pus that develops in a hair follicle or oil gland. The skin over the infected area usually becomes red and swollen." http://www.mayoclinic.com/health/staph-infections/DS00973/DSECTION=symptoms (accessed

1/15/2013). The bacteria can be transmitted from person to person, a person may carry the staph bacteria and never get staph infection, staph bacteria can also live on inanimate objects. http://www.mayoclinic.com/health/staph-infections/DS00973/DSECTION=causes (accessed 1/15/2013). However, "[i]f you have a staph infection, there's a good chance that it stemmed from bacteria you've been carrying around for some time." *Id.*

Defendants summary judgment does not contain any affidavits from Steed or a medial care provider that would establish that they were unaware of the staph infection. I believe there is a genuine issue of fact as to whether Defendant was aware of Plaintiff's have acquired staph infection and did nothing to ensure he received proper medical.

### B. Overcrowding

"[O]vercrowding alone is insufficient to create a due process violation." *A.J. by L.B. v. Kierst*, 56 F.3d 849, 854 (8th Cir. 1995). Here, Plaintiff has not shown that the "overcrowding led to deprivations of essential food, medical care, or sanitation." *Patchette v. Nix*, 952 F.2d 158, 162 (8th Cir. 1991)(*citing Cody v. Hillard*, 830 F.2d 912, 914 (8th Cir. 1987)).

Plaintiff stated he always had a mattress or bunk to sleep on. He had access to a day-room, was able to shower and keep his body clean, and his basic human needs for food, clothing, and shelter were met. A *de minimis* level of imposition does not rise to the level of a constitutional violation. *Bell v. Wolfish*, 441 U.S. 520, 539 n. 21 (1979). *See also Wilson v. Seiter*, 501 U.S. 294, 305-05 (1991)("Nothing so amorphous as 'overall conditions' can rise to the level of cruel and unusual punishment when no specific deprivation of a single human need exists.").

### C. Only Two Toilets for Seventeen Men

The summary judgment record does not indicate that Plaintiff was unable to utilize the toilet when it was necessary for him to do so, that lines formed for the use of the toilet, or that he was required to wait for long periods of time to use the toilet. *See Patchette v. Nix*, 952 F.2d 158, 163 (8th Cir. 1991). On the record before the Court there is simply no genuine issue of fact as to whether the lack of available toilet facilities led to deprivations of essential food, medical care, or sanitation, nor increased violence among inmates.

### D. No Hot Water and Mold

The lack of hot water in the cells does not state a claim of constitutional dimension. Plaintiff had assess to soap at all times and when he needed or wanted hot water he could obtain it from the shower. With respect to the mold problem, Plaintiff has not alleged that this problem existed in the cell he was assigned to. Even if it did, Plaintiff admits they were provided cleaning supplies including bleach.

### E. Lack of Exercise

A constitutional violation exists if prison officials are deliberately indifferent to an inmate's exercise needs. *Wishon v. Gammon*, 978 F.2d 446, 449 (8th Cir. 1992). A "lack of exercise may be a constitutional violation if one's muscles are allowed to atrophy or if an inmate's health is threatened." *Id*. Among factors the court should consider in reviewing such a claim are: (1) the opportunity to be out of the cell; (2) the availability of recreation within the cell; (3) the size of the cell; and (4) the duration of confinement. *Id*.

Here, Plaintiff could exercise in his cell or in the day room. While he contends it sometimes

irradiated other inmates, he does not maintain it was impossible for him to exercise. Once a month, Plaintiff states he was allowed outdoor exercise. Plaintiff makes no claim that his muscles atrophied as a result of inadequate opportunities to exercise. While he alleges the lack of outdoor exercise meant the inmates were not getting enough vitamin D, nothing in the summary judgment record indicates Plaintiff had any type of vitamin deficiency. Plaintiff has made no showing that detention center facility were deliberately indifferent to his exercise needs. *Hosna v. Groose*, 80 F.3d 298, 306 (8th Cir. 1996); *see also Rahman X v. Morgan*, 300 F.3d 970, 974 (8th Cir. 2002)(no deliberate indifference established when inmate was not allowed outside exercise for three months but was permitted to use a dayroom with exercise equipment for three hours each week).

### F.  Denial of Medical Care

The Eighth Circuit analyzes both a pretrial detainee's and a convicted inmate's claim of inadequate medical care under the deliberate indifference standard. *See Butler v. Fletcher*, 465 F.3d 340, 344 (8th Cir. 2006). To prevail on an Eighth Amendment claim, Hinson must prove that defendants acted with deliberate indifference to his serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). The deliberate indifference standard includes "both an objective and a subjective component:  'The [plaintiff] must demonstrate (1) that [he] suffered [from] objectively serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded those needs.'" *Jolly v. Knudsen*, 205 F.3d 1094, 1096 (8th Cir. 2000)(*quoting  Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir.1997)).

"For a claim of deliberate indifference, the prisoner must show more than negligence, more even that gross negligence, and mere disagreement with treatment decisions does not give rise to the level of a constitutional violation. Deliberate indifference is akin to criminal recklessness, which

demands more than negligent misconduct." *Popoalii v. Correctional Medical Services*, 512 F.3d 488, 499 (8th Cir. 2008)(internal quotation marks and citations omitted).

Here, Plaintiff states he contracted a staph infection which resulted in him having boils. He has asserted under penalty of perjury that he was denied a nurse visit. He also indicates the as soon as he arrived at the ADC they began treating the infection. I think it is without question that a staph infection constitutes a serious medical need.

### 5.  Conclusion

For the reasons stated, I recommend Defendants' summary judgment motion (ECF No. 15) be granted in part and denied in part. Specifically, it should be granted with respect to the following claims: overcrowding; limited number of toilets; no hot water and mold; and lack of exersise. The motion should be denied with respect to the following claims: the sleeping conditions; and denial of medical care.

**The parties have fourteen (14) days from receipt of the report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1).  The failure to file timely objections may result in waiver of the right to appeal questions of fact.  The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 30th day of January 2013.

                                              /s/ Barry A. Bryant
                                              HON. BARRY A. BRYANT
                                              UNITED STATES MAGISTRATE JUDGE